I. TANENBAUM, SON & CO., Appellant, *v.* ROTHENBERG & CO., Respondent.

First Department, May 19, 1922.

Insurance — fire insurance — action by insurance agent for breach of contract with insured — insured agreed to apply for and procure insurance from agent for five years — agent agreed to furnish insurance at fixed rates and had right under contract to decrease fire risk by installing sprinkler system, etc., and to place insurance with companies authorized to do business in this State or in any of five other named States — contract not invalidated on ground that insurance might be placed with companies not authorized to do business here — contract not in violation of public policy or Insurance Law, § 65.

Where the owner of buildings agreed to apply for and procure from the plaintiff, as its agent, during the period of five years fire insurance policies on its buildings, merchandise and equipment, and the agent agreed to furnish the insurance at a fixed rate named in the contract, and it was stipulated that the insurance was to be placed with companies and individual underwriters then or thereafter authorized to do business in this State or in any one of five other named States, and the agent was given the authority to reduce fire risk by installing sprinkler systems in the buildings, automatic fire alarms and other improvements and protection against fire, the contract is not illegal and void on the ground that the parties agreed that the insurance might be placed with companies and individuals not authorized to do business in this State, for the contract may be performed by placing the insurance with companies authorized to do business here, and, moreover, section 137 of the Insurance Law in some circumstances permits the placing of insurance with companies not authorized to insure in this State.

Said contract is not violative of public policy or of section 65 of the Insurance Law, for said statute does not expressly relate to or affect a contract between the insured and its agent or broker for services in procuring the insurance or for the performance of other work or the furnishing of material calculated to minimize fire hazards, and is applicable only to the insurer and its officers, agents and representatives, and not to contracts between the insured and its own agent or broker.

The contract does not violate the provision of the said statute prohibiting an insurance agent from sharing commissions with the insured, for it contains no agreement to the effect that the insured is to share in any commission that the broker may receive from the insurer.

APPEAL by the plaintiff, I. Tanenbaum, Son & Co., from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 26th day of August, 1920, overruling plaintiff's demurrer to a separate defense in the answer.

*Olcott, Bonynge, McManus & Ernst* [*David Leventritt* of counsel; *Alexander L. Strouse, Terence J. McManus* and *Mayer L. Halff* with him on the brief], for the appellant.

*Nathan D. Stern,* for the respondent.

LAUGHLIN, J.:

This is an action for damages for the breach of a contract made in writing between the parties on the 22d of June, 1914. Plaintiff is a domestic corporation engaged in business as general insurance broker. Defendant agreed to apply for and procure through the plaintiff as its agent during the period of five years from the 1st of March, 1914, fire insurance policies on the buildings and premises known as 34–42 West Fourteenth street and 33–45 West Thirteenth street, borough of Manhattan, New York, and upon the merchandise, machinery, furniture, fixtures and improvements owned by it or in its possession or control in said buildings or on said premises, and upon the rents of said buildings and premises and the use and occupancy thereof, and the use and occupancy of the business conducted therein and thereon. The policies were to be at all times in amounts equal at least to the full value of the property and specified items and at no time less than $200,000 on merchandise, machinery, furniture, fixtures and improvements, use and occupancy and commissions and profits, and $100,000 on the buildings and rents. The defendant agreed to pay the plaintiff on demand on the procurement of the policies a fixed rate per annum for the insurance for the entire period, namely, $1 per every $100 of insurance on merchandise, machinery, furniture, fixtures and improvements, use and occupancy, commissions and profits, and seventy-two and one-half cents on each $100 of insurance on buildings and rents. It was provided that the insurance should be placed with companies and individual underwriters then or thereafter authorized to do business in this State or in the States of New Jersey, Pennsylvania, Rhode Island, Massachusetts or Illinois or with such others as might be agreed upon by the parties. It was agreed that if the premises should be so used as to increase the then condition of hazard the defendant should pay the additional rate of premium caused thereby. The defendant also agreed to procure through the plaintiff as its agent such *additional* insurance

of every kind as it might require during the period covered by the contract and to pay therefor the premium specified in the policies. It is recited in the contract that the defendant, having definitely bound itself to accept and carry *at fixed rates* the insurance first specified in the contract, shall afford the plaintiff the right as broker to place any other insurance controlled by it so that the plaintiff may make the customary brokerage commissions thereon allowed by insurers to brokers. It was further provided that insurance on the defendant's merchandise held temporarily for a period shorter than one year should be paid for at rates specified in a schedule thereto annexed, described as " standard short-rate scale." The agreement also obligated the defendant in the event it subleased any part of the premises to exact agreements from its tenants to place their insurance through the plaintiff upon the same terms as if it had been procured for the defendant under the agreement; and it was further agreed that the contract could not be so construed as to constitute the plaintiff an insurer or underwriter and, in effect, that in the event that plaintiff failed to procure insurance, defendant's only recourse would be to obtain the insurance itself. The defendant also agreed to allow the plaintiff to re-equip and add to the sprinkler system installed in the buildings and on the premises with automatic sprinklers, automatic fire alarm, and other improvements and protection against fire and to maintain, change or remove the same from time to time; and to make improvements, changes, alterations, additions and repairs and to equip the buildings and premises or any part thereof with such fire improvements as it might deem requisite and proper and to maintain the same or substitute others therefor. The obligation of the plaintiff to procure the insurance was made dependent upon performance by the defendant of these agreements on its part. The agreement contains other provisions with respect to the installation of sprinkler systems not material to the appeal. Plaintiff alleges that in or about the month of September, 1918, while the agreement was in full force and effect, defendant obtained insurance of various kinds and forms in connection with its use and occupancy of the business conducted by it on said premises, whereby plaintiff was deprived of the profits which otherwise would have been made and which it was entitled to make under the contract, and has suffered damages in the sum of $1,500. Defendant pleaded as a separate defense that the contract was made and entered into in violation of the Insurance Law of the State of New York and was unlawful and illegal and contrary to the public policy of our State. To this defense the plaintiff demurred on the ground that it was insufficient in law.

Two grounds of illegality are assigned by the respondent in support of its defense. The first is that the parties agreed that insurance might be placed with companies and individuals not authorized to do business in this State (See Ins. Law, § 54), but since the contract may be performed without violating the law by placing the insurance with companies authorized to do business here that would not invalidate it; and moreover, since our statute in some circumstances permits the placing of insurance with companies not authorized to insure here (Ins. Law, § 137, as amd. by Laws of 1911, chap. 322, and since amd. by Laws of 1917, chap. 510), I think the contract should be construed as in accordance with the law and as contemplating the placing of insurance with companies authorized to do business in other States only where that is permitted by our law.

The other ground upon which it is claimed that the contract is void is, that it is in violation of the provisions of section 65, which was added to the Insurance Law by chapter 416 of the Laws of 1911, and amended by chapter 225 of the Laws of 1912 and by chapter 25 of the Laws of 1913, and that was its status when the contract was made. That section then provided, so far as here material, as follows: " No insurance corporation, association, partnership, Lloyds or individual underwriters authorized or permitted to do any insurance business within this State, or any officer, agent, solicitor or representative thereof, shall make any contract for such insurance, on property or risk located within this State, or against liability, casualty, accident or hazard that may rise or occur therein or agreement as to such contract, other than as plainly expressed in the policy issued or to be issued thereon; nor shall any such corporation, association, partnership, Lloyds or individual underwriters, or officer, agent, solicitor or representative thereof, directly or indirectly, in any manner whatsoever pay or allow or offer to pay or allow as inducement to such insurance, or after the insurance shall have been effected, any rebate from the premium which is specified in the policy or any special favor or advantage in the dividends or other benefit to accrue thereon, or any valuable consideration or inducement whatever, not specified in the policy or contract of insurance, or give, sell or purchase, or offer to give, sell, or purchase, as inducement to such insurance, or in connection therewith, any stock, bonds or other securities of any insurance company, or other corporation or association, or any dividends or profits accrued thereon, or anything of value whatsoever, not specified in the policy, nor shall any insurance broker, his agent or representative, or any other person, directly or indirectly, either by sharing commissions or in any manner whatsoever pay or allow

or offer to pay or allow as inducement to such insurance, or after the insurance shall have been effected, any rebate from the premium which is specified in the policy; nor shall the insured, his agent or representative, directly or indirectly accept or knowingly receive any such rebate from the premium specified in the policy; this section shall not prevent any corporation, person, partnership or association lawfully doing such insurance business in this State from the distribution of surplus and dividends to policy holders after the first year of insurance nor prevent any member of an inter-insurance or Lloyd's association from receiving the profit of his or its under-writing; nor shall this section prevent any such corporation or other insurer, or his or its agent, from paying commissions to the broker who shall have negotiated for the insurance, nor shall this section prevent any licensed broker from sharing or dividing a commission earned or received by him with any other licensed broker or brokers who shall have aided him in respect to the insurance for the negotiation of which such commission shall have been earned or paid, and nothing herein contained shall be held to prevent the covering of risks by temporary binders or such other memoranda as do not conflict with the provisions of this chapter. Nor shall this section prevent any such corporation or other insurer, or any agent or insurance broker, from distributing or presenting to any person or corporation any article of merchandise not exceeding one dollar in value, which shall have conspicuously stamped or printed thereon the advertisement of such insurance corporation, agent or broker."

Ordinarily the validity of the contract would depend upon the law as it existed at the time it was made; but since the statutory enactments with respect to these matters are made by the Legislature in the exercise of the police power, it is possible, in view of some recent decisions, that existing contracts might be affected by subsequent legislation in the exercise of the police power. Subsequent legislation on the subject, however, made no important change. Section 65 was further amended by chapters 440 of the Laws of 1917 and 141 of the Laws of 1918, but those amendments, so far as they affect the provisions of the statute herein quoted, were evidently enacted to clarify the phraseology of the section; and they contain no provision extending the prohibition of the statute with respect to agreements or transactions between insurance brokers and the insured, or the insurer or its employees and the insured or his representatives, and, therefore, it is not necessary to quote the amendments. I am of opinion that the contract does not violate or necessarily contemplate the violation of the statute or of any public policy of the State. It will be observed that the

statute does not expressly relate to or affect a contract between the insured and his or its agent or broker for services in procuring the insurance or for the performance of other work or the furnishing of material calculated to minimize fire hazards.  The contract contains no agreement to the effect that the insured is to share in any commission the broker may receive from the insurer.  The only contingency in which the insured might have obtained under the contract the benefit of a lower premium rate than that exacted by the insurers is, if the fixed rates which the defendant agreed to pay the plaintiff should be less than the rates charged by insurers with respect to the property as it existed or might exist without any improvement made thereon by the plaintiff to reduce the hazard; and it does not appear that such a contingency existed or arose, and manifestly it was not contemplated, but on the contrary, it was expected that there would be a difference in plaintiff's favor between the amount which it received from defendant and the amount it would be obliged to pay the insurer for the premiums on the policies, for in no other manner would the plaintiff be compensated for its services.  Plaintiff has been using this form of contract for a long time, and the provisions thereof and of similar contracts were before the court frequently prior to the enactment of said section 65; and they were uniformly sustained as constituting valid contracts.  (*Tanenbaum* v. *Rosenthal*, 44 App. Div. 431; *Romberg* v. *Kouther*, 27 Misc. Rep. 227; *Tanenbaum* v. *Greenwald*, 67 App. Div. 473; *Tanenbaum* v. *Eiseman*, 83 id. 639; *Tanenbaum* v. *Levy*, Id. 319; affd., 178 N. Y. 594; *Tanenbaum* v. *Federal Match Co.*, 189 id. 75; *Tanenbaum* v. *Simon*, 40 Misc. Rep. 174; affd., 84 App. Div. 642; *Tanenbaum* v. *Freundlich*, 39 Misc. Rep. 819.) The validity of such contracts since the enactment of said section 65 does not appear to have been adjudicated; but their validity as affected by section 1 of chapter 641 of the Laws of 1892, which had been re-enacted in section 144 of the Insurance Law,* was presented for adjudication in *Tanenbaum* v. *Rosenthal* (*supra*) and *Romberg* v. *Kouther* (*supra*), and in both cases it was held that the contract was not forbidden by those statutory provisions, which were as follows: " It shall not be lawful hereafter for any fire insurance company, or for any officer, manager, agent or other representative of any such company, to include in the sum charged or designated in any policy, as the consideration for insurance, any fee, compensation, charge or perquisite whatsoever."

Those statutory provisions were construed as applicable only to the insurer and to its officers, agents and representatives, and as not applicable to contracts between the insured and his or its own

---

* Since repealed by Laws of 1922, chap. 660.— [REP.

agent or broker; and it was also held that in so far as the contract provided for procuring insurance, the agent or broker with whom it was made was the agent of the insurer. The Legislature undoubtedly intended to provide for uniform rates of insurance on all property of the same class and subject to the same hazard; and by these various provisions forbidding rebates in any form or manner, it was expected that the statute would be effective to prevent discriminations by, or directly or indirectly at the instance or in behalf of, an insurer. (*American Smelting & Refining Co.* v. *Stettenheim*, 177 App. Div. 392; *Kennedy* v. *Supreme Council C. B. L.*, 188 id. 613.) But I think the public is not concerned with respect to the compensation a property owner may see fit to make to his agent or broker for services performed in procuring fire insurance or in installing apparatus minimizing fire hazards. The only point presented for decision is whether the contract on its face is invalid as being in contravention of a statute or of the public policy of the State, and I am of the opinion that it is not. It follows that the order should be reversed, with ten dollars costs and disbursements, and the demurrer sustained, with ten dollars costs.

CLARKE, P. J., DOWLING, PAGE and MERRELL, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.

