ARCIM CORPORATION, Plaintiff, *v.* LOUIS H. PINK, as Superintendent of Insurance of the State of New York, Defendant.

Third Department, March 9, 1938.

*Wagner, Quillinan & Rifkind* [*Simon H. Rifkind* and *Sidney R. Nussenfeld* of counsel], for the plaintiff.

*John J. Bennett, Jr., Attorney-General* [*Henry Epstein, Solicitor-General,* and *Leonard M. Gardner, Special Assistant Attorney-General,* of counsel], for the defendant.

BLISS, J. This question has been submitted to us upon an agreed statement of facts: " May plaintiff lawfully, under its license, act as broker in procuring the issuance of policies of insurance in which the named assureds are Aaron Rabinowitz, James L. Clare and Lawrence N. Martin, and their successors in trust, as trustees of Series F-1, and/or corporations the stock of which is directly or indirectly wholly owned by said trustees, and may plaintiff lawfully receive commissions for acting as broker in procuring said policies? "

Plaintiff is a domestic corporation, licensed to do business as an insurance broker, and all of its stock is owned by the above named trustees in their representative capacity. They are its sole directors and officers as well. These trustees were appointed by the Supreme Court for the benefit of the holders of Series F-1 first mortgage certificates of the New York Title and Mortgage Company now in default and in process of reorganization under the Schackno Act. Plaintiff desires to continue to act as broker and receive commissions in

securing insurance policies in which the named assureds are the trustees or a corporation wholly owned by them. The defendant has advised plaintiff in substance that it may not legally so act and that it must discontinue such practice.

The statute involved is section 65 of the Insurance Law, the pertinent portions of which read: " nor shall any insurance broker * * * directly or indirectly, * * * in any manner whatsoever pay or allow * * * to the insured named in such policy * * * as inducement to such insurance, or after the insurance shall have been effected, any rebate from the premium which is specified in the policy; nor shall the insured, * * * directly or indirectly accept or knowingly receive any such rebate from the premium specified in the policy."

First it is to be observed that the trustees are here seeking to save for their beneficiaries a portion of the cost of insurance on the properties being administered by them under their trust. The method used by them is a wholly owned corporation, which will receive commissions on the insurance it brokers and then pass these commissions back to the trustees in the form of dividends on its capital stock. Thus the net result of the transaction is a saving to the insured on insurance premiums. The plaintiff urges that this it may legally do because it is a legal entity separate and distinct from the insureds and that the dividends on its stock are returns on the capital invested by its stockholders. But call it what you will, the net result is that the insureds, through the circuitous route of their corpration, are receiving their insurance at less than the premiums specified in their policies. This is in effect a rebate from the established rate and an inducement for the placing of the insurance. It was such practices as this that the statute was designed to prevent. Judge HINMAN, recently of this court, discussed one phase of this question in an opinion rendered by him when he was First Deputy Attorney-General (17 State Dept. Rep. 478), and there held that a broker was prevented by this statute from procuring a commission on property insured in his own name. That was a direct violation of the statute. The instant practice is an indirect violation which the statute specifically forbids. The use of the separate corporate entity to accomplish the same result is merely effecting it by indirection instead of directly. The statute forbids the practice, when accomplished either directly or indirectly.

In discussing this section of the Insurance Law, the Appellate Division, First Department, said: " The Legislature undoubtedly intended to provide for uniform rates of insurance on all property of the same class and subject to the same hazard; and by these various provisions forbidding rebates in any form or manner, it was

430

expected that the statute would be effective to prevent discrimination by, or directly or indirectly at the instance or in behalf of, an insurer." (*Tanenbaum, Son & Co.* v. *Rothenberg & Co.*, 201 App. Div. 272, 278.)

If these trustees may do what they seek here, then any property owner may form an insurance brokerage corporation and thus procure his insurance at less than the premium specified in the policy. This is not a case of insurance being placed incidentally by an insurance brokerage corporation on property of one of its stockholders, and some small portion of the broker's commission coming back to the insured as dividends. It is no mere insignificant or unintentional occurrence. Stripped of its non-essentials the transaction is in substance a rebate from the premium. This the statute forbids.

The question submitted should be answered in the negative and judgment rendered for the defendant, without costs.

HILL, P. J., McNAMEE, CRAPSER and HEFFERNAN, JJ., concur.

Questions submitted answered in the negative, and judgment rendered for the defendant, without costs.