## Insurance on Financed Motor Vehicles

UMSTED, Deputy Attorney General, January 23, 1948.—You have asked to be advised concerning the legality of certain common practices followed in the placing of fire, theft and collision insurance upon financed motor vehicles. In the cases to which you refer us the facts are briefly as follows:

1. A motor vehicle dealer is a fire insurance agent. He sells an automobile on bailment lease and adds to the cost of the vehicle finance charges which include interest on the balance due and cost of fire, theft and collision insurance.[1]

(a) He holds the lease and pockets the agent's commission on the insurance;

(b) He negotiates the lease to a finance company which in turn buys the insurance through him and he then pockets the agent's commission.

2. A motor vehicle dealer is not a fire insurance agent. He sells an automobile on bailment lease and adds to the cost of the vehicle finance charges which include interest on the balance due and cost of fire, theft and collision insurance.

---

[1] These must be itemized and the amounts kept within the limitations prescribed by the Motor Vehicle Sales Finance Act of June 28, 1947, P. L. 1110.

(a) He negotiates the lease to a finance company which refunds to the dealer a portion of the finance charges based on a percentage of the insurance commission collected by the finance company as a fire insurance agent, or by an agency which is a subsidiary of the finance company.

To answer your query requires an interpretation of sections 635 and 636 of The Insurance Department Act of May 17, 1921, P. L. 789, 40 PS §§275 and 276, as they apply to the incidents of the transactions whereby a motor vehicle dealers sells vehicles on time payment plans. These sections we quote as follows:

"No insurance agent, solicitor, or broker, personally or by any other party, shall offer, promise, allow, give, set off, or pay, directly or indirectly, any rebate of, or part of, the premium payable on the policy or on any policy or agent's commission thereon, or earnings, profit, dividends, or other benefit founded, arising, accruing or to accrue thereon or therefrom, or any special advantage in date of policy or age of issue, or any paid employment or contract for services of any kind, or any other valuable consideration or inducement, to or for insurance on any risk in this Commonwealth, now or hereafter to be written, which is not specified in the policy contract of insurance; nor shall any such agent, solicitor, or broker, personally or otherwise, offer, promise, give, option, sell, or purchase any stocks, bonds, securities, or property, or any dividends or profits accruing or to accrue thereon, or other thing of value whatsoever, as inducement to insurance or in connection therewith. Nothing in this section shall be construed to prevent the taking of a bona fide obligation, with legal interest, in payment of any premium.

"No insured person or party or applicant for insurance shall, directly or indirectly, receive or accept, or agree to receive or accept, any rebate of premium, or of any part thereof, or all or any part of any agent's, solicitor's, or broker's commission thereon, or any

favor or advantage, or share in any benefit to accrue under any policy of insurance, or any valuable consideration or inducement, other than such as are specified in the policy."

The plan of operation where a motor vehicle is sold on time payment plan is as follows:

The manufacturer sells the motor vehicle to its automobile dealer at a wholesale price. The dealer then becomes the owner of the vehicle. He leases it to the purchaser upon receiving from him a down payment, and provides in the lease agreement that the balance of the retail purchase price, together with finance charges, which include interest on the balance due, and cost of fire, theft and collision insurance, shall be paid in equal installments over a fixed period of time. He retains certain rights upon default, one of which is the right to repossess the vehicle. The title [2] to the vehicle remains in the dealer until the final installment payment is met by the purchaser.

A dealer's insurable interest in the vehicle is, at the inception of the contract, the equivalent of the unpaid balance of the contract price and diminishes to zero as payments on account are made by the purchaser. The dealer is at all times, up until the final installment payment, the legal owner of the insured property. The purchaser is the equitable owner whose equity increases to 100 percent as payments on account of the purchase price are made.

Where the dealer negotiates the lease to a finance company, title to the vehicle is transferred to it along with all the dealer's rights under the lease. But insofar as the insurance is concerned, that is covered by a binder from the time the vehicle leaves the dealer's floor and at a time when he is its owner. The lease may

---

[2] Title, as used here, is not to be confused with the title subject to an encumbrance issued by the Department of Revenue to the purchaser. That is an administrative expedient which does not affect the actual ownership.

not be assigned to the finance company for days, weeks or months, during which period the dealer has, as above set forth, a very substantial insurable interest in the vehicle.

The language employed in sections 635 and 636 above quoted is quite similar to that found in the Act of May 3, 1909, P. L. 405, which was superseded by the Act of July 12, 1913, P. L. 745, repealed insofar as it applies to insurance agents, solicitors and brokers by section 701 of the Insurance Department Law of 1921.

In construing the Act of 1909, Deputy Attorney General, later Superior Court Judge, Cunningham, in Dare's Case, 36 Pa. C. C. 683 (1909), had this to say with regard to a life insurance agent who collected the commission from the premium on a policy of insurance written on his own life:

"By writing policies of insurance on his own property, or his own life, the agent eliminates the distinction existing in the act of 1909 between agents and insurants, and places himself in both classes, but by becoming an insurant in a company represented by him as agent, he does not lose his identity, or rights, as agent of the company. Among these rights is the right to receive his usual commissions on all business written for his company. It can hardly be contended that the legislature intended to deprive a bona fide insurance agent of his commissions on policies covering his own life, or his own property, merely because he has followed a natural inclination to insure his life, or his property, in companies which he represents as agent.

"The mischief which the legislature sought to remedy is the unfair treatment of prospective insurants of the same class by offering inducements to one person that are not available to all persons of the same class.

"The advantage or inducement accruing to an agent in insuring his own life, or property, is not something held out to him by the company, or an agent of the company, but arises from the fact that he happens to be at the same time the agent of the company and the owner of something which he desires to insure in the company.

．　　　．　　　．　　　．　　　．　　　．　　　．　　　．

"It must be understood, however, that *this conclusion is intended to apply only to the cases of bona fide insurance agents engaged in that occupation as a business, or regularly employed as such.*

"If the circumstances of any particular case should disclose that an individual had been appointed the agent of an insurance company merely to the end that he as such agent might insure his property, or life, in the company appointing him, and thereby secure the advantage of the usual agent's commission, I am of opinion that the retention of commissions under such circumstances would constitute the giving, and receiving, of a rebate of the premiums payable on the policy, and should properly be constructed to be a violation . . ." (Italics supplied.)

Applying this principle of law with which we fully agree to sections 635 and 636 of The Insurance Department Act of 1921, we must conclude that unless they are isolated instances in an otherwise general fire insurance agency business, the transactions outlined in cases 1(a) and 1(b) are illegal: Arcim Corp. v. Pink, Superintendent of Insurance, 253 App. Div. 428, 2 N.Y.S. (2d) 709 (1938), affirmed 280 N.Y. 721, 21 N. E. (2d) 213 (1939). And such transactions should not be countenanced by your department.

The facts indicated in case 2(a) undoubtedly constitute a violation of the law in that under the guise of refunding part of the finance charges to a dealer who is not a fire insurance agent, he is given a share of the agent's commissions on fire insurance which has been

placed through his promotion. This is a rebate of premium which is specifically prohibited by section 636 of The Insurance Department Act of 1921.

We are, therefore, of the opinion, and you are accordingly advised, that unless it is an isolated transaction in an otherwise active agency, a motor vehicle dealer who is a fire insurance agent may not receive any part of the agent's commission on fire, theft and collision insurance placed upon a motor vehicle which he sells on bailment lease, or other time payment plan. Nor may a motor vehicle dealer who is not an insurance agent, directly or indirectly, share in the agent's commission for fire, theft and collision insurance which is placed upon any motor vehicle sold on bailment lease, or other time payment plan.