**TRELLEBORG, AB, Plaintiff,**

v.

**FRANK B. HALL & CO. OF NEW YORK, INC., Defendant.**

No. 90 Civ. 1993 (BN).

United States District Court, S.D. New York.

Sept. 11, 1996,

---

Harrington Haley L.L.P., New York City, for Plaintiff (James J. Harrington, of counsel).

Robinson Brog Leinwand Greene Benovese & Gluck P.C., New York City, for Defendant (Michael F. Fitzgerald and John D. D'Ercole, of counsel).

## OPINION

NEWMAN, Senior Judge: [1]

Trelleborg, AB ("plaintiff") brings this action for breach of contract against Frank B. Hall & Co. of New York, Inc. ("defendant") arising under the court's diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a). Presently before the court is defendant's motion for summary judgment in conformity with F.R.C.P. Rule 56.

## BACKGROUND

Plaintiff is a publicly held Swedish industrial conglomerate and defendant is a New York licensed insurance broker. During the spring of 1989 plaintiff, seeking consolidation of its North American subsidiaries' insurance coverage, engaged defendant and another company to submit proposals. On June 6, 1989 after plaintiff chose defendant's proposal, the parties entered into a contract requiring defendant to procure casualty insurance coverage, at a specified price, for each of plaintiff's North American subsidiaries during the period of October 1, 1989 until October 1, 1990. In the fall of 1989, defendant informed plaintiff that it could not provide the insurance at the contracted price and that defendant would be required to pay higher premiums in order to maintain the agreed coverage.

As a result, plaintiff contends that it was required to purchase casualty insurance through another broker for substantially higher premiums than set forth in its contract with defendant. In filing this suit, plaintiff seeks recovery of damages in excess of $1.3 million from defendant for the alleged breach of contract and claimed negligence in failing to obtain coverage within the parameters of the contract. In response, defendant maintains that it has not breached any con-

---

1. Bernard Newman, Senior Judge of the United States Court of International Trade, sitting as United States District Judge by designation.

tract or duty to plaintiff and, in any event, that plaintiff has not suffered any compensable loss.

Defendant urges that the court grant the instant motion because the contract between defendant and plaintiff for the procurement of insurance is prohibited by New York statutory law and is therefore void. Additionally, defendant insists that because the contract was premised on inaccurate and misleading loss information supplied by plaintiff, it is unenforceable. Finally, defendant submits that plaintiff has not suffered measurable damages claiming that plaintiff cannot establish it could have purchased insurance from any carrier at the price stated in the contract if accurate loss information was disclosed. Plaintiff asserts that since material factual disputes surround these issues and that defendant's legal positions are without merit, the summary judgment motion must be dismissed.

## DISCUSSION

Summary judgment may be granted only if viewing the evidence in the light most favorable to the nonmovant party, the court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. Rule 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the burden of establishing the absence of any factual dispute. *Celotex,* 477 U.S. at 322–323, 106 S.Ct. at 2552–2553. If the movant satisfies this requirement the burden then shifts to the nonmovant to come forward with specific facts showing the existence of a genuine issue necessitating a trial. *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514–2515.

The court finds the existence issues of fact exist respecting each of defendant's claims, and thus the motion is denied.

## A.

■ Defendant's first contention is that the contract itself, by virtue of New York statutory law, is illegal. Obviously, "[i]llegal contracts are, as a general rule unenforceable." *Lloyd Capital Corp. v. Pat Henchar Inc.,* 80 N.Y.2d 124, 127, 589 N.Y.S.2d 396, 397, 603 N.E.2d 246, 247 (1992). If the contract is unenforceable, even after drawing all factual inferences in favor of the plaintiff, defendant would be entitled to summary judgment. The court, however, finds that the defendant has not sufficiently established that the contract is of the type which falls under the New York prohibition. Accordingly, summary judgment on this issue would be inapplicable.

New York law provides that:

... no licensed insurance broker shall make, procure or negotiate any contract of insurance other than as plainly expressed in the policy or other written contract issued as evidence thereof ...

New York Insurance Law § 2324(a). Additionally, defendant points to a second statute prohibiting a licensed insurance broker from:

... knowingly, charge or demand a rate or receive a premium which departs from the rates, rating plans, classifications, schedules, rules and standards in effect on behalf of the insurer, or shall issue to make any policy or contract involving a violation thereof.

New York Insurance Law § 2314. According to defendant, these statutes prohibit a broker from entering into a contract with an insured to provide insurance coverage for a premium that deviates from the premiums specified in the policy. Defendant submits that since plaintiff's entire claim is premised on the fact that defendant contracted with plaintiff to offer insurance at a lower rate than was the actual cost of the policy, the contract would have been illegal at inception and cannot be enforced.

Plaintiff's sole response is that defendant's argument has already been rejected by the New York courts and relies upon *Tanenbaum Son & Co. v. Rothenberg & Co.,* 201 A.D. 272, 194 N.Y.S. 315 (1st Dept.1922), *aff'd,* 236 N.Y. 520, 142 N.E. 267 (1923). In that case the court held that the statute, which was the predecessor of § 2324, did not "expressly relate to or affect a contract between the insured and his or its agent or

broker for services in procuring the insurance" and that the contract in issue did not violate public policy. *Id.,* 194 N.Y.S. at 319. After close examination of that decision, as well as the statute before the First Department, the court determines that the *Tanenbaum* conclusion is not relevant to the case at bar. As the *Tanenbaum* court pointed out, the statute it was considering was "not applicable to contracts between the insured and his or its agent or broker." *Id.,* 194 N.Y.S. at 320. Unlike the statute before that court, § 2324 specifically includes contracts between an insured and a "licensed insurance broker." Therefore, plaintiff's reliance on *Tanenbaum* is misplaced.

Notwithstanding the failure of plaintiff to advance a satisfactory response to defendant's claim, the court is constrained to nonetheless deny defendant's motion on this issue. Under New York law an insurance broker may not "make, procure or negotiate any contract of insurance other than as plainly expressed in the policy ..." however, there remains issues of fact as to whether at the time the contract was offered the price quoted to plaintiff accurately reflected the policy's premium. While defendant continually urges that plaintiff failed to provide adequate information needed to obtain the accurate cost of coverage, it does not claim that the price quoted in the contract offered to plaintiff inaccurately reflected the policy's price based on the available information. If this is so, the contract would not have been illegal at the time it was made in that the broker would have made a contract that was consistent with the policy price. Merely because new developments or information may have affected the cost of the insurance does not mean that the broker violated § 2324. Indeed, when defendant learned that it could not procure the insurance at the stated contract price, defendant informed plaintiff that the insurance coverage agreed upon would have increased premiums. Section 2324 prohibits a broker from offering insurance at any rate other than is stated in the policy. Drawing all inferences in favor of the non-moving party it appears, based upon the submissions before the court, that the contract offered by defendant comported with New York Insurance Law § 2324. All of the inferences point to the conclusion that when defendant offered to procure insurance for defendant, the premiums quoted in the agreement comported with the actual insurance prices premised upon the information obtained at that time. Since it cannot be said that the contract is illegal, as a matter of law, summary judgment based upon this claim would be inappropriate.

**B.**

■ Defendant next contends that it is entitled to summary judgment because the undisputed facts demonstrate that plaintiff did not disclose material information with respect to plaintiff's loss information. The court finds that there are questions of fact regarding this claim thereby precluding summary judgment. Under New York law, "materiality is ordinarily a question of fact, the standard for disclosure being whether a reasonable insured should have believed the fact was something the insurer would consider material." *Christiania Gen. Ins. Corp. Of New York v. Great American Ins. Co.,* 979 F.2d 268, 278 (2d Cir.1992); *Aguilar v. United States Life Ins. Co.,* 162 A.D.2d 209, 210, 556 N.Y.S.2d 584, 585 (1st Dept.1990)[2]. Moreover, even if the court could, as a matter of law, find that the information defendant claims to have not received was material, other issues of fact would preclude summary judgment.

Defendant, in support of its motion, argues that plaintiff either wilfully or negligently did not provide accurate and complete loss infor-

---

**2.** In furtherance of its motion, defendant argues that *Pinette v. Assurance Co. of America,* 52 F.3d 407 (2d Cir.1995) (construing Connecticut law) provides support for this court to find that the alleged misinformation in this case was material, as a matter of law. While the loss information in this matter may very well be material, the court does not read *Pinette* to establish the standard of materiality for New York. Indeed, in its decision supporting the District Court's finding of materiality under Connecticut law, the Second Circuit noted its decision was supported by Connecticut case law suggesting that an answer to a question on an insurance application is *"presumptively material."* *Id.* at 411 (citing, *State Bank & Trust Co. v. Connecticut Gen. Life Ins. Co.,* 109 Conn. 67, 68, 145 A. 565, 566 (1929) (emphasis added)).

mation when asked. Plaintiff responds that it was defendant who accepted a duty to obtain risk information directly from the subsidiaries, and further that defendant's negligence caused defendant to fail to ascertain or properly digest the information provided by plaintiff's subsidiaries. Attempting to substantiate this claim, plaintiff argues that defendant:

> wrote to and visited [plaintiff's] North American subsidiaries. [Defendant] had access to Johnson & Higgins (the prior broker for the North American subsidiaries) and to the subsidiaries' risk managers, documents and other information, including prior insurance policies, coverage specifications, manuscript endorsements, payroll data, financial information, loss information by category of coverage for the period 1983 to 1988, and a separate list of losses in excess of $25,000.

Plaintiff's Memorandum of Law in Opposition, p. 33. Although defendant agrees that it ultimately learned of additional losses, there is no indication where or when the information came into defendant's possession. Left unanswered is whether defendant learned of the information through the information provided by plaintiff or from some other source. Even assuming an alternative source other than plaintiff, it is unclear whether it was defendant's responsibility to have explored that source before a proposal was made. In short, several questions of fact exist as to whether it was plaintiff's failure or defendant's negligence which caused certain loss information to be withheld from the insurer.

### C.

■ Finally, defendant advances the proposition that since plaintiff, as a matter of law, cannot demonstrate any cognizable damage, the motion should be granted. In support of its contention, defendant asserts that plaintiff "could *absolutely* not have obtained the coverages set forth in [defendant's] proposal at any price near the price at which Hall proposed." Defendant's Motion in Support of Summary Judgment, p. 22. Defendant principally relies upon *Rodriguez v. Investors Ins. Co.*, 201 A.D.2d 355, 607 N.Y.S.2d 329 (1st Dept.1994) to buttress this argument.

Defendant, however, has misapplied the standard established by the New York courts because the cost of replacement insurance is not relevant to the analysis. In *Rodriguez,* the First Department stated that in order for a broker to be held liable for failing to procure insurance "it must be demonstrated that the coverage sought could have been procured." *Id.* 607 N.Y.S.2d at 330. Significantly, the court went on to say that "plaintiff did not prove Investors would have covered the greater area for a larger premium." *Id.* This statement illustrates the fallacy in defendant's instant claim. Clearly the court was concerned that a party submit proof that coverage was obtained, but established no requirement that plaintiff demonstrate that the coverage would be at the same price. Thus, defendant's argument is without merit.

Moreover, although defendant maintains that plaintiff could not have received the coverage originally proposed, there certainly exists a factual question as to whether this assertion is true. Indeed, plaintiff submits a letter which states that the insurance coverage had been procured, although at a higher price. Plaintiff's Exhibit 15. Defendant's only rejoinder is that plaintiff had not met its burden to demonstrate that "reliance would still be willing to provide the coverage at the alleged contract price proposed by [defendant] in June 1989." Defendant's Reply Brief, p. 8. Since there is a sufficient factual issue raised by this claim, defendant's argument does not provide a basis upon which summary judgment may be granted.

### CONCLUSION

The court finds the existence of genuine issues of material facts, and hence, defendant's motion for summary judgment is hereby **denied.**

**IT IS SO ORDERED.**